**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LIGHTKEEPER, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ARCANA ANALYTICS, INC.,<br><br>Defendant. | Civil Action No. __________<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Lightkeeper, LLC ("**Lightkeeper**"), by and through its undersigned counsel, alleges the following against Defendant Arcana Analytics, Inc. ("**Arcana**"):

**PRELIMINARY STATEMENT**

1. Lightkeeper is a Boston-based financial technology company that provides portfolio intelligence, data management, portfolio analytics, and reporting software and services to investment management firms. Lightkeeper's platform enables investment managers to aggregate data from multiple sources into a single, reliable system and to derive actionable insights from that data at speed and at scale. Since its inception in 2010, Lightkeeper has developed its business through sustained investment in engineering and close collaboration with sophisticated investment managers and advisers to understand and address their data, analytics, and reporting needs.

2. That long and labor-intensive development process has produced a substantial body of proprietary methods and product intelligence that constitutes Lightkeeper's competitive advantage in a crowded marketplace. These proprietary processes include rules and methods of analyzing investment data, workflows and highly efficient dashboards, and report generation

methodologies that translate raw portfolio data into decision-ready analysis—all are the hard-earned result of Lightkeeper's substantial investment of time and capital into its products. By successfully developing its platform this way, Lightkeeper built substantial goodwill around its name and intellectual property, including its federally registered service mark INSIGHTS AT THE SPEED OF THOUGHT®.

3. Defendant Arcana entered the same specialized market more recently, well aware of Lightkeeper's offerings and position in the marketplace. Arcana's platform initially focused on front-office risk analytics, using factor models to attribute overall portfolio performance and risk, showing how much risk comes from systematic risks affecting the overall market and how much comes from a portfolio's own unique, idiosyncratic risk. Lightkeeper's platform has a broader scope, primarily focused on strong back-office reporting and analytics functions. Because of the historical differences between their respective platforms, a number of investment management firms have used, and currently use, both Lightkeeper and Arcana simultaneously. In connection with those overlapping client relationships, Lightkeeper, as the trusted custodian of its clients' data, agreed at the request of certain clients to transmit raw client data to Arcana for Arcana's own processing. At all times, Lightkeeper was diligent in ensuring it did not share its proprietary reports, analytics, or methodologies with Arcana. Instead, Lightkeeper has only sent Arcana data expressly belonging to a particular client, typically passing through data received from third parties such as a customer's fund administrator or custodian, which has been cleaned and normalized by Lightkeeper. Lightkeeper facilitated these data transfers in good faith, understanding that the two companies occupied distinct positions in the market and that the arrangement served the mutual interests of the shared clients.

4. That relationship changed when Lightkeeper recently reviewed Arcana's public-facing website and marketing materials and noticed Arcana's brazen scheme to steal Lightkeeper's products and brand identity. In late August 2026, Lightkeeper first learned that Arcana published screenshots of reports and dashboards, presented as examples of its reporting capabilities. Lightkeeper recognized a striking similarity with confidential Lightkeeper report families, which had only ever been distributed to its clients subject to confidentiality restrictions. But the closer Lightkeeper inspected them, the more Arcana's materials appeared to use the same report structures, headings, metric groupings, analytical relationships, fonts, coloring and dashboard layouts reflected in Lightkeeper reports. Lightkeeper quickly realized these were not just similarities, but an almost exact replica of Lightkeeper's product offerings.

[redacted]

[redacted]

[redacted] *Lightkeeper report (left); Arcana public material (right).*

[redacted]

*Fund Overview reporting. Lightkeeper report (left); Arcana public material (right).*

***Additional comparisons appear in sections below and in Exhibit A.***

5. Indeed, the similarities reach beyond the architecture of the reporting to the very substance of the analytics core to Lightkeeper's product. [redacted]

To an audience outside institutional investment management, the significance of these individual metrics and labels appearing in two companies' reporting structures may not be immediately apparent. Within that market, however, a report reflects a series of deliberate product judgments: which metrics to select, which analyses to place together, how to sequence them, how to divide results among the full portfolio and its long and short books, and how to organize those relationships so that an investment professional can move efficiently from portfolio data to an analytical conclusion. Arcana's materials reproduce those choices in combination, not merely isolated financial terms, including the same report progression, metric groupings, analytical

relationships, and visual hierarchy found in Lightkeeper's confidential reporting. Arcana even unabashedly copied the font, coloring and spacing of Lightkeeper's proprietary reporting format. Those combinations reflect Lightkeeper's accumulated product judgments about which information belongs together, which analytical relationships matter, and how investment data should be organized for institutional users. Despite the layered confidentiality Lightkeeper painstakingly implemented to protect this combination of data and analysis, Arcana copied wholesale Lightkeeper's product and placed that very same presentation in its own public materials.

6. Seeing these public materials prompted Lightkeeper to investigate how Arcana had obtained and reproduced Lightkeeper's confidential reports and proprietary analytical know-how. Through that investigation, Lightkeeper determined that on information and belief, Arcana used one or more relationships with prospective or shared customers as a route to obtain protected Lightkeeper information, which Arcana used to develop or refine its own analytics, workflows, reports, and related functionality.

7. The same investigation revealed another, even more brazen form of appropriation: Arcana is marketing its competing portfolio analytics application under the slogan "Insight at the speed of thought," a slavish, wholesale imitation of one of Lightkeeper's registered marks. Lightkeeper has used INSIGHTS AT THE SPEED OF THOUGHT® in connection with its financial-information and analytics services since at least June 2022, and the United States Patent and Trademark Office registered that mark on the Principal Register in March 2024, a fact about which Arcana had notice given its working relationship with Lightkeeper. So core is the slogan to Lightkeeper's brand identity, in fact, that it has registered the same mark in the United Kingdom, South Korea, Australia, New Zealand, Japan and Hong Kong.







*Lightkeeper website (left); Arcana's App Store listing (right).*

8. Arcana has been operating in the shadows, stealthily obtaining access to Lightkeeper's proprietary information and stealing both the substance and the identity of Lightkeeper's business. Arcana has, on information and belief, appropriated proprietary technology, reporting logic, methodologies, workflows, and know-how that give Lightkeeper's platform its competitive value, while also adopting the source-identifying language through which Lightkeeper presents its platform to the market.

9. Based on what Lightkeeper has seen in Arcana's public-facing materials alone, there is a substantial likelihood that Arcana is engaging in even more far-ranging misappropriation of other aspects of Lightkeeper's platform, including any or all of the information and technology embodied in Lightkeeper's reports. Indeed, Lightkeeper remains in the dark as to what other branding or collateral Arcana is using, or has used, Lightkeeper's registered trademark on. As a result, Lightkeeper cannot determine the full scope of Arcana's efforts to misappropriate all aspects of Lightkeeper's business until it obtains fulsome discovery in this case.

10. It is one thing to compete fairly. It is an entirely different for Arcana to steal a competitor's proprietary information and intellectual property and pass it off as its own to new and existing customers. Lightkeeper brings this action to stop Arcana's fraudulent course of conduct and theft of brand identity, protect the assets created through years of Lightkeeper's investment, and hold Arcana responsible for the commercial advantage it has attempted to steal from Lightkeeper through its illegal and unethical copycat tactics.

## PARTIES

11. Plaintiff Lightkeeper LLC ("**Lightkeeper**") is a Delaware limited liability company with its principal place of business at 200 State Street, 12th Floor, Boston, Massachusetts 02109. Lightkeeper also maintains an office at 420 Lexington Avenue, Suite 2522, New York, New York 10170. Lightkeeper's workforce consists of approximately 40 employees. Its headquarters and all client solutions support personnel are located in Boston, Massachusetts.

12. Defendant Arcana Analytics, Inc. ("**Arcana**") is a data analytics company with its principal place of business in New York, New York. Arcana markets a portfolio-risk and analytics platform that uses factor models to attribute portfolio performance and risk to underlying market exposure.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over Lightkeeper's federal trademark claims under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).

14. This Court has subject-matter jurisdiction over Lightkeeper's Defend Trade Secrets Act claim under 18 U.S.C. § 1836 because the trade secrets at issue relate to products and services used in, or intended for use in, interstate and foreign commerce.

15. This Court has supplemental jurisdiction over Lightkeeper's Massachusetts-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Lightkeeper's federal claims.

16. Arcana is subject to specific personal jurisdiction in Massachusetts because the claims arise directly from Arcana's knowing participation in the acquisition and exploitation of confidential information and trade secrets that belong to Lightkeeper, a Massachusetts-based competitor, and are stored in Massachusetts. Lightkeeper stores and maintains its confidential product information, including the Lightkeeper Trade Secrets (defined below), in Massachusetts. Arcana knew that it was obtaining Lightkeeper's proprietary information, had firsthand familiarity with Lightkeeper and the controlled conditions under which mutual customers received access to Lightkeeper's nonpublic materials, and nevertheless used the Source Customer (defined below) as a route to obtain or exploit that information for Arcana's own competitive purposes and to Lightkeeper's detriment. Arcana's misconduct was therefore intentionally directed at Massachusetts-based proprietary rights and information and caused the resulting injury to Lightkeeper's Massachusetts operations. Arcana did not need to enter the Commonwealth physically to commit that digital misconduct, and it could reasonably anticipate being called to account in Massachusetts for knowingly obtaining and exploiting proprietary information maintained there.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Lightkeeper's claims occurred there and a substantial part of the property that is the subject of this action is situated there. The confidential information and trade secrets that Arcana obtained and exploited are stored and maintained in Massachusetts. The sequence of events underlying the claims therefore includes Arcana's acquisition and exploitation

of proprietary information situated in this District, together with the resulting impairment of Lightkeeper's Massachusetts-based operations and competitive rights. The remote acquisition and exploitation of Massachusetts-stored proprietary information forms a substantial part of the events underlying this action.

## FACTUAL ALLEGATIONS

### A. Lightkeeper Built Its Platform Through Sixteen Years of Product Development and Client Trust

18. Lightkeeper was founded in 2010 by three veterans of the investment management industry. The founders spent the first several years of the company's existence building and refining Lightkeeper's product through extensive engagement with investment professionals, listening to the needs of the market, and developing a platform built for the way investment firms operate.

19. When Lightkeeper launched, it started with zero clients and a library of approximately 40 statistics. Over the course of sixteen-plus years of sustained development and client feedback, the company has grown that offering to encompass over 450 proprietary statistics, more than 50 standard reports, and data curated from over 90 sources. Today, the platform serves over 150 clients across four continents, administering in excess of $600 billion in assets.

20. Lightkeeper's platform is organized under its flagship product, Portfolio Intelligence. Portfolio Intelligence ingests, enriches, and visualizes data across systems, empowering investment managers to aggregate and normalize data from multiple sources, explore portfolios dynamically through performance, risk, factor, and scenario analytics, automate comprehensive reporting across the front, middle, and back offices, and respond instantly to ad hoc investor requests.

21. The development of Lightkeeper's platform has been, from the beginning, a collaborative process between the company and its clients. Lightkeeper regularly convenes roundtables and discussions with its client base to identify best practices, discuss emerging analytical needs, and develop new capabilities. This community-driven development model is core to Lightkeeper's competitive advantage and distinguishes its platform from competitors who lack the same industry depth and duration of client relationships. Client investment managers regularly bring the Lightkeeper platform from one firm to the next as they move through their careers, and many of them describe Lightkeeper as an extension of their own team. Lightkeeper's proprietary reports are the product of more than sixteen years of sustained refinement based on the feedback and insights of scores of clients.

**B. Lightkeeper Built a Distinctive Brand Around INSIGHTS AT THE SPEED OF THOUGHT**

22. Lightkeeper has used INSIGHTS AT THE SPEED OF THOUGHT as a source-identifying slogan in connection with financial-information, analysis, research, and related services since at least June 2022. The phrase appears prominently in Lightkeeper's marketing and product communications to the investment-management industry.

23. On March 26, 2024, the United States Patent and Trademark Office registered INSIGHTS AT THE SPEED OF THOUGHT on the Principal Register as U.S. Registration No. 7,339,287 in International Class 36. The registration covers financial information and advisory services, financial analysis, financial consultancy, financial data analysis, financial information, and financial research and information services relating to finance and investments. A true and correct copy of the registration certificate is attached as **Exhibit B**.

24. The registration protects the mark in standard characters, independent of font, style, size, or color. Lightkeeper owns the registration and the goodwill associated with the mark.

Registration on the Principal Register has constituted constructive notice of Lightkeeper's claim of ownership since March 26, 2024. 15 U.S.C. § 1072. The registration is also prima facie evidence of the mark's validity, Lightkeeper's ownership, and Lightkeeper's exclusive right to use the mark in commerce in connection with the services identified in the registration. 15 U.S.C. § 1115(a).

25. Lightkeeper gives public notice of that federal registration in the marketplace itself. On its public-facing homepage, Lightkeeper displays INSIGHTS AT THE SPEED OF THOUGHT® immediately beneath the LIGHTKEEPER name and above the description "The Portfolio Intelligence Platform Built for Investment Managers." The ® symbol appears directly with the registered mark and supplies the statutory notice contemplated by 15 U.S.C. § 1111. A screenshot of Lightkeeper's homepage is attached as **Exhibit C**. Lightkeeper's use and promotion of the mark tie a concise promise — speed joined with insight — to the core function of its platform and have built goodwill around that source-identifying phrase. The mark has been displayed on Lightkeeper's website since July 2022, with the ® symbol displayed on the website shortly following registration in March 2024.




*Lightkeeper homepage excerpt showing the registered mark and ® notice; full supplied screenshot attached as Exhibit C.*




*Lightkeeper brochure showing the registered mark and ® notice; full supplied screenshot attached as Exhibit D.*

**C. Arcana Entered the Same Specialized Market with Firsthand Knowledge of Lightkeeper and its Product**

26. Arcana offers a portfolio-intelligence and analytics platform that is both complementary and potentially competitive to Lightkeeper. Arcana publicly markets its platform to hedge funds, asset managers, portfolio managers, analysts, risk teams, and investment professionals, and promotes portfolio construction, performance attribution, risk management, research, mock portfolios, alpha capture, factor exposures, P&L, and related analytics.

27. Lightkeeper and Arcana therefore market to and compete over an overlapping set of prospective customers. Their services are offered to the same narrow professional market, through overlapping digital, direct-sales, and institutional channels, to help investment professionals analyze portfolio performance, risk, exposures, research, and investment decisions.

28. Arcana also has firsthand familiarity with Lightkeeper. The companies encounter one another through mutual customers, and Arcana has interacted with Lightkeeper in customer settings where Arcana could see that: access to Lightkeeper is controlled; customer data and Lightkeeper proprietary information are carefully fortressed; and Lightkeeper protects its nonpublic reports, logic, workflows, and product information. Specifically, approximately five Lightkeeper clients have asked Lightkeeper to send Arcana basic accounting data, such as profit and loss fund information. The clients made these requests, in part, because Lightkeeper's data integrity and management is superior to the original data source. In these circumstances, Lightkeeper is simply passing on a cleaned-up version of the client's original source data to Arcana. The data Lightkeeper sent to Arcana did not include the proprietary calculations that occur on the Lightkeeper platform, a fact about which Arcana is intimately aware.

**D. The Competitive Value of Lightkeeper's Product Lies in the Protected Machinery Behind the Output**

29. The "Lightkeeper Trade Secrets" are the nonpublic implementation rules, formulas, mappings, taxonomies, data structures, sequences, configuration logic, architecture, and report-generation logic by which Lightkeeper produces those results. They include, but are not limited to: (a) data management rules used to transform records into a client-specific investment book of records; (b) formulas that archive the data; (c) numerous and varied computing methodologies used to analyze data and features within the data; (d) report-generation and analytical logic embodied in the Lightkeeper reports.

30. The Lightkeeper Trade Secrets derive independent economic value from their secrecy. Lightkeeper developed them through years of engineering, implementation work, investment-management expertise, and recurring client feedback. They are not generally known or readily ascertainable by proper means. A competitor that acquires them can avoid

experimentation, market research, and engineering dead ends, compress development cycles, prioritize market-validated functionality, and reproduce mature analytics and reporting with materially less time and expense.

31. Lightkeeper's trade secret claims target its own proprietary methods, architecture, logic, workflows, calculations, relationships, know-how, and compilations. Client portfolio data remains the property of the client, and public-facing interface elements stand on their own legal footing.

32. Lightkeeper protects the Lightkeeper Trade Secrets through a comprehensive framework of contractual, technical, and operational safeguards. All clients execute master service agreements ("**MSAs**") that contain robust confidentiality provisions. Those agreements contain materially uniform protections reflected in Lightkeeper's standard form master services agreement (the "**Model MSA**") it enters into with customers. A true and correct copy of the Model MSA is attached as **Exhibit E**.

33. The Model MSA confines access to identified users, defining "Licensed Seats" as "the named individuals that are authorized under this Agreement to operate and access the Software and Services," with each such individual assigned "distinct user identification and password." Model MSA § 1. The license itself permits access and use of the Software "solely for Client's business purposes of managing and monitoring its Funds' financial and operating metrics." *Id.* § 2.1.

34. The Model MSA also imposes express restrictions designed to prevent customer access from becoming a means of competitive appropriation. Section 2.2 provides that a client may permit access only within the number of Licensed Seats and by persons identified as Licensed Seats, and expressly prohibits efforts to "reverse engineer, decompile, disassemble, or otherwise

attempt to discern the source code, algorithms, file formats, or interface protocols of the Software." Section 2.3 separately provides that Lightkeeper remains the "sole owner of the Software and the Documentation including all copyrights and other intellectual property rights relating thereto," with customers receiving only the limited rights expressly granted under the agreement. *Id*. § 2.3.

35. Further, the Model MSA also reinforces its access restrictions through confidentiality provisions. The Model MSA defines Lightkeeper Confidential Information to include "the Software, any source code relating thereto, as well as nonpublic information or material regarding [Lightkeeper's] legal or business affairs, financing, customers, properties or data," and requires such information to "be held in strict confidence." Model MSA § 6.1. The receiving party must "take reasonable measures to maintain the confidentiality of the Confidential Information in its possession or control," and its use of that information is confined to performance of its obligations under the agreement and other uses authorized by the agreement. *Id*.

36. The Model MSA permits disclosure to employees or consultants only in circumstances where they have a need to know the information for performance of the agreement and are "bound by confidentiality obligations which are at least as protective as those set forth herein." *Id*. § 6.2.

37. For prospective customers, Lightkeeper's policy is likewise to only share its proprietary information after it enters into a non-disclosure agreement ("**NDA**") with each prospective customer. The company's form NDA, like the MSA, restricts the use of Lightkeeper's proprietary information by a recipient for the purpose of evaluating a potential engagement. Prospective customers are forbidden from sharing Lightkeeper's proprietary information with third parties, including competitors such as Arcana.

38. This framework was designed to ensure that Lightkeeper's proprietary information—including Lightkeeper Trade Secrets—remains out of the hands of competitors.

39. Lightkeeper stores and maintains its confidential product information, including the Lightkeeper Trade Secrets, in Massachusetts. Lightkeeper reinforces its contractual restrictions with technical and operational safeguards, including individualized access controls, protected customer environments, data segregation, encryption at rest, SAML integration, IP-based access controls, controlled onboarding, and practices designed to preserve the integrity and confidentiality of historical and current information.

## E. Arcana Used A Lightkeeper Customer to Obtain Information Subject to Contractual Restrictions and Create Its Competing Product Offering

40. Lightkeeper provides customers access to its platform and proprietary information pursuant to written master services agreements or equivalent agreements, as described above. All customers with access to the nonpublic materials at issue in this action are bound by materially uniform contractual restrictions governing access to, use of, and disclosure of Lightkeeper's confidential information. Critically, Lightkeeper has never agreed, for either a client or prospective client, to waive the confidentiality restrictions described above.

41. Arcana obtained the proprietary information at issue through a current or prospective Lightkeeper customer whose identity remains to be established through discovery (the "**Source Customer**"). The Source Customer's identity, its communications with Arcana, and the mechanics through which Arcana received access or information lie principally within the possession of Arcana and the Source Customer, who have been covertly conspiring to steal Lightkeeper's proprietary information.

42. The contractual status of the Source Customer is a direct reflection of the manner in which Lightkeeper provides access to the materials at issue. Lightkeeper supplies those

materials only to customers bound by the contractual protections described above. The Source Customer therefore was party, at the time of the conduct alleged here, to an enforceable written agreement containing strict confidentiality restrictions, either in the form of an NDA or the materially uniform restrictions reflected in the Model MSA, including the Licensed Seat restrictions in § 1, the purpose limitation in § 2.1, the access and reverse-engineering restrictions in § 2.2, Lightkeeper's reservation of ownership in § 2.3, and the confidentiality and downstream-disclosure obligations in §§ 6.1 and 6.2. Those provisions governed the Source Customer's access at the time it provided Arcana the access or materials alleged here.

43. On information and belief, Arcana worked covertly with the Source Customer to obtain access to nonpublic Lightkeeper materials, including one or more proprietary reports, screens, exports, screenshots, credentials, data structures, analytical outputs, documentation, or other confidential product information. Upon information and belief, the Source Customer possessed those materials solely by virtue of its contractual relationship with Lightkeeper, and the governing agreement confined their use and disclosure to authorized customer purposes.

44. Arcana knew that contractual restrictions governed the Source Customer's access. Arcana is a sophisticated participant in the same specialized investment-management technology market, competes directly with Lightkeeper, has firsthand familiarity with Lightkeeper and its platform through mutual customers, and understood that Lightkeeper makes its proprietary reports and product information available through controlled customer relationships.

45. Arcana knew that the information belonged to Lightkeeper, that the Source Customer possessed it because of its contractual relationship with Lightkeeper, that Lightkeeper treated the information as confidential and proprietary, and that the Source Customer's access served the Source Customer's own investment-management purposes. On top of that, each page

of Lightkeeper's proprietary reports is emblazoned with the marking "Proprietary and Confidential." Those facts gave Arcana direct knowledge of the contractual and confidential character of the information and of the limits governing its use.

46. On information and belief, Arcana intentionally induced, encouraged, facilitated, or participated in conduct by the Source Customer that exceeded those contractual limits. Arcana sought, accepted, or exploited customer-provided access or materials so that Arcana could inspect, acquire, copy, extract, study, or use Lightkeeper's confidential information in connection with the development of Arcana's own competing commercial offering.

47. Lightkeeper's review of Arcana's public website and marketing identified multiple Arcana reports and dashboards that reproduce distinctive structures and analytical relationships found in Lightkeeper report families distributed under confidentiality restrictions. The examples below are illustrative, reflecting a broader pattern of appropriation of Lightkeeper's confidential materials of which Lightkeeper's investigation may have only scratched the surface.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

48. By furnishing access or information for Arcana's competitive purposes, the Source Customer breached its contractual obligations to Lightkeeper. Arcana's conduct was a substantial and intended cause of that breach because Arcana sought or accepted the restricted information for its own commercial benefit and used the customer relationship as the means of acquiring it.

49. Arcana employed improper means and pursued an improper competitive purpose. It knowingly exploited a customer's contractual access to obtain a competitor's protected commercial information and convert that information into a competitive advantage. The interference claim reaches Arcana's inducement and exploitation of breaches of confidentiality and access restrictions governing information broader than the subset of information that ultimately may receive statutory trade-secret protection.

50. The Source Customer's identity, the communications through which Arcana arranged or encouraged the access, the credentials or materials supplied, and the full scope of Arcana's resulting use are expected to be established through records within Arcana's and/or the Source Customer's control.

51. Arcana's interference damaged Lightkeeper by depriving it of the contractual protections for which it bargained, compromising the exclusivity and commercial value of its confidential information, and enabling a direct competitor to acquire restricted information.

52. Meanwhile, Arcana's access gave it the opportunity to bypass years of independent development. The misappropriation of protected Lightkeeper information allowed Arcana to shorten engineering timelines, avoid research and development expense, prioritize features that the market had already validated through Lightkeeper, and present matured functionality as Arcana's own.

53. Lightkeeper first learned facts supporting the present misappropriation theory in August 2026.

**F. Arcana Adopted Lightkeeper's Mark for Competing Services**




*Screenshot of Arcana App Store listing; screenshot attached as Exhibit F.*

54. In September 2026, Lightkeeper discovered Arcana was infringing its trademark by using “Insight at the speed of thought.” as a prominent headline in App Store marketing for its Arcana Analytics application. The headline appears immediately beneath “PORTFOLIO ANALYTICS” and immediately above an image of an “Asset Contribution” analytics screen. Apple identifies the developer as Arcana Analytics, Inc., the category as Finance, and the product as “Portfolio Intelligence.” The full supplied screenshot is attached as **Exhibit F**.

55. Arcana’s wording tracks Lightkeeper’s registered mark word for word, with one minor change: Arcana uses the singular “Insight” where Lightkeeper’s registration uses the plural “Insights.” The wording, syntax, cadence, meaning, and commercial impression are otherwise identical.

56. Arcana uses the phrase in the same field covered by Lightkeeper’s registration and in direct connection with the same core subject matter. Arcana’s App Store presentation markets a Finance-category portfolio-intelligence platform for investment professionals that tracks returns, P&L, factor exposures, performance, risk, and research; Lightkeeper’s registration covers financial information, financial analysis, financial data analysis, financial consultancy, and financial research and information services. The parties address the same class of investment-management customers through overlapping channels.

57. While Lightkeeper only has access to one public-facing instance of Arcana’s use of its trademarked slogan, Lightkeeper is hard-pressed to believe that after going to the trouble of stealing and deploying Lightkeeper’s intellectual property so brazenly, Arcana is not using the slogan elsewhere. Indeed, Lightkeeper believes that Arcana is using INSIGHT AT THE SPEED OF THOUGHT in numerous, private-facing marketing materials, the extent of which Lightkeeper will only learn through discovery.

58. Arcana adopted and uses the slogan without authorization, consent, or license from Lightkeeper.

59. Arcana's prior familiarity with Lightkeeper, its position in the same specialized market, and the near-verbatim wording support a reasonable inference that Arcana knew of Lightkeeper's mark when it adopted the challenged slogan.

60. Arcana's use is likely to cause confusion, mistake, or deception as to affiliation, connection, sponsorship, approval, licensing, or common commercial origin. The marks are nearly identical in sight, sound, meaning, syntax, cadence, and commercial impression; the parties' services directly overlap; their channels and customer base overlap; and Arcana adopted the phrase after gaining firsthand familiarity with Lightkeeper. The fact that Arcana and Lightkeeper serve a subset of overlapping customers only amplifies the legitimate likelihood of confusion when Arcana uses Lightkeeper's registered marks in the marketplace.

**G. Arcana's Conduct Threatens the Brand and Competitive Advantage Lightkeeper Spent Years Building**

61. Arcana's challenged conduct strikes at least two assets that distinguish Lightkeeper in the market: the goodwill embodied in its registered mark and the confidential know-how embodied in its product. Each form of appropriation reduces the return on the investment Lightkeeper made to create those assets.

62. Arcana's use of a one-letter variation of Lightkeeper's mark erodes Lightkeeper's control over its brand and creates a continuing risk of confusion in a concentrated market where customers and prospects routinely encounter both companies.

63. Arcana's acquisition and use of Lightkeeper Trade Secrets threatens a separate competitive injury. A competitor armed with Lightkeeper's accumulated methods and product intelligence can reach market-ready functionality faster, spend less to get there, compete more

aggressively on price and features, and diminish the commercial advantage Lightkeeper earned through years of work.

64. The resulting injury includes loss of control over brand identity and goodwill, impairment of competitive advantage, price and sales pressure, threatened loss of customers and opportunities, and harm associated with accelerated competitive entry and development costs Arcana avoided. The continued use of the challenged slogan and the continuing competitive value of confidential product intelligence threaten injuries for which monetary relief alone does not fully restore Lightkeeper's control over its property and market position.

**COUNT I**
**Federal Trademark Infringement**
**(15 U.S.C. § 1114)**

65. Lightkeeper incorporates the preceding allegations as though fully set forth here.

66. Lightkeeper owns valid and subsisting U.S. Registration No. 7,339,287 for INSIGHTS AT THE SPEED OF THOUGHT on the Principal Register. The registration has provided constructive notice of Lightkeeper's claim of ownership since March 26, 2024. 15 U.S.C. § 1072. It is prima facie evidence of the mark's validity, Lightkeeper's ownership, and Lightkeeper's exclusive right to use the mark in commerce in connection with the registered services. 15 U.S.C. § 1115(a). Lightkeeper also displays the ® symbol directly with the Mark on its public-facing homepage, providing statutory notice of registration under 15 U.S.C. § 1111.

67. Arcana has used in interstate commerce, without Lightkeeper's consent, the slogan "Insight at the speed of thought." as a prominent commercial headline in advertising for Arcana's directly competing portfolio-intelligence and financial-analytics services, including nationwide App Store marketing.

68. Arcana's slogan is a reproduction, copy, or colorable imitation of the Lightkeeper Mark. It differs in operative wording only by changing the plural "Insights" to the singular "Insight," producing nearly the same appearance, pronunciation, meaning, cadence, and commercial impression.

69. Arcana's use is likely to cause confusion, mistake, or deception as to affiliation, connection, association, sponsorship, approval, licensing, or source. The near identity of the marks, the direct overlap in services, the overlap in channels and prospective customers, and Arcana's prior familiarity with Lightkeeper all support likely confusion. The willfulness allegation rests on Arcana's firsthand familiarity with Lightkeeper, the public display of the registered mark with the ® symbol, the parties' direct competition, and Arcana's adoption of a near-verbatim designation for overlapping services.

70. By adopting a virtual copy of the Lightkeeper brand, Arcana seeks to create the commercial impression among Lightkeeper customers and potential customers that it is sponsored, affiliated, approved, or otherwise licensed by Lightkeeper to its commercial advantage. In doing so, Arcana is trading on the equity Lightkeeper has built up over years of successful commercial activity.

71. Arcana's conduct violates 15 U.S.C. § 1114. Lightkeeper has provided statutory notice of its federal registration by displaying the ® symbol directly with the Mark, and Lightkeeper seeks the injunctive and monetary relief available under 15 U.S.C. §§ 1116, 1117, and 1118, including Arcana's profits and Lightkeeper's damages for the periods authorized by law.

**COUNT II**
**False Designation of Origin and Federal Unfair Competition**
**(15 U.S.C. § 1125(a)(1)(A))**

72. Lightkeeper incorporates the preceding allegations as though fully set forth here.

73. Arcana's use of "Insight at the speed of thought." in interstate commerce in connection with directly competing portfolio-intelligence and financial-analytics services constitutes a word, term, name, symbol, device, or false designation that is likely to cause confusion, mistake, or deception as to Arcana's affiliation, connection, association, sponsorship, approval, or commercial origin.

74. The challenged designation appears as a prominent marketing headline for Arcana's Finance-category portfolio-intelligence application and reaches the same investment-professional market Lightkeeper serves. Arcana's use threatens and injures Lightkeeper's goodwill, brand identity, customer relationships, and competitive position.

75. Lightkeeper is entitled to injunctive and monetary relief under 15 U.S.C. §§ 1116 and 1117 and other applicable law.

**COUNT III**
**Misappropriation of Trade Secrets — Defend Trade Secrets Act**
**(18 U.S.C. § 1836 et seq.)**

76. Lightkeeper incorporates the preceding allegations as though fully set forth here.

77. The Lightkeeper Trade Secrets constitute trade secrets within the meaning of 18 U.S.C. § 1839(3). As alleged above, they consist of identified categories of financial, business, and technical information (including formulas, implementation rules, mappings, taxonomies, data structures, architecture, methods, processes, procedures, and compilations) that are not generally known or readily ascertainable through proper means, derive independent economic value from secrecy, and are protected through reasonable contractual, technical, and operational measures.

78. Lightkeeper reasonably protects the secrecy of the Lightkeeper Trade Secrets through various measures, including contractual confidentiality obligations, individualized access controls, and other technical and operational safeguards designed to preserve their secrecy and commercial value.

79. The Lightkeeper Trade Secrets relate to products and services used in, or intended for use in, interstate and foreign commerce.

80. On information and belief, Arcana acquired one or more Lightkeeper Trade Secrets while knowing or having reason to know that the acquisition involved improper means, including breach or inducement of duties to maintain secrecy or limit access and use. Arcana also used or disclosed one or more Lightkeeper Trade Secrets while knowing or having reason to know that the information came through a person subject to such duties. The factual basis for that inference includes the access route, Arcana's knowledge of the restrictions, and the access-plus-similarity facts alleged herein.

81. Arcana's acquisition, use, and disclosure constitute misappropriation within the meaning of 18 U.S.C. § 1839(5). Arcana exploited its restricted access to confidential information for its own competitive development. Arcana did not independently derive, lawfully observe public functionality, or reverse engineer the Lightkeeper Trade Secrets through proper means.

82. Arcana's misappropriation has caused actual loss to Lightkeeper and unjust enrichment to Arcana, including competitive harm and development costs Arcana avoided. On information and belief, Arcana acted willfully and maliciously. Lightkeeper seeks the relief available under 18 U.S.C. § 1836(b)(3), including injunctive relief, actual-loss damages, unjust-enrichment damages not otherwise included in actual loss, a reasonable royalty where appropriate,

exemplary damages, and attorneys' fees. The claim is timely under 18 U.S.C. § 1836(d), as Lightkeeper only discovered the facts underlying the misappropriation claim in August 2026.

**COUNT IV**
**Misappropriation of Trade Secrets — Massachusetts Trade Secrets Act**
**(Mass. Gen. Laws ch. 93, §§ 42–42G)**

83. Lightkeeper incorporates the preceding allegations as though fully set forth here.

84. The Lightkeeper Trade Secrets qualify as trade secrets under Mass. Gen. Laws ch. 93, § 42(4). Paragraphs 32 through 39 identify the nature of the secrets and the basis for protection, including their nonpublic implementation content, economic value from secrecy, and Lightkeeper's contractual, technical, and operational safeguards.

85. The circumstances of misappropriation are pleaded with reasonable particularity as required by Mass. Gen. Laws ch. 93, § 42D(b): Arcana obtained restricted access through the Source Customer, knew of the limits attached to that access, and used the resulting confidential information for Arcana's own competitive development, as further alleged in paragraphs 40 through 49.

86. On information and belief, Arcana acquired, disclosed, or used Lightkeeper Trade Secrets while knowing or having reason to know that the information was obtained through improper means or through a person subject to duties limiting acquisition, disclosure, or use. Arcana's conduct exceeded any properly authorized customer access and does not constitute independent derivation or reverse engineering from properly accessed information.

87. Lightkeeper has suffered actual loss, and Arcana has obtained unjust enrichment that includes avoided development expense and accelerated product development. Lightkeeper seeks injunctive relief, actual-loss and unjust-enrichment damages, a reasonable royalty where appropriate, and, for willful and malicious misappropriation, exemplary damages and attorneys'

fees under Mass. Gen. Laws ch. 93, §§ 42A–42C. The claim is timely under Mass. Gen. Laws ch. 93, § 42E, as Lightkeeper only discovered the facts underlying the misappropriation claim in August 2026.

**COUNT V**
**Unfair or Deceptive Acts and Unfair Methods of Competition**
**(Mass. Gen. Laws ch. 93A, §§ 2 and 11)**

88. Lightkeeper incorporates the preceding allegations as though fully set forth here.

89. Lightkeeper and Arcana engage in trade or commerce within the meaning of Chapter 93A.

90. Arcana engaged in unfair methods of competition and unfair acts in trade or commerce by, among other things, using restricted customer access for its own competitive development; inducing or knowingly taking advantage of violations of confidentiality and access restrictions; acquiring or exploiting Lightkeeper confidential and proprietary information whether or not every item is ultimately adjudged a statutory trade secret; appropriating a near-verbatim variation of Lightkeeper's registered slogan for directly competing services; and using those advantages to accelerate a competing product and compete against Lightkeeper.

91. This Chapter 93A claim rests on a broader course of marketplace misconduct than trade-secret misappropriation alone. Its independent predicates include trademark appropriation, circumvention and inducement of contractual access restrictions, and misuse of confidential commercial information even to the extent particular information falls outside statutory trade-secret protection. Lightkeeper pleads those acts as unfair methods of competition independently of any remedy pursuant to Mass. Gen. Laws ch. 93, § 42F.

92. The actions and transactions constituting the Chapter 93A violation occurred primarily and substantially in Massachusetts. Lightkeeper is headquartered in Massachusetts, and

its confidential product information (including the Lightkeeper Trade Secrets that Arcana targeted, acquired, and exploited) is stored and maintained here. Arcana's scheme was directed at proprietary rights and information situated in Massachusetts and at the Massachusetts-based operations that created, protected, and commercialized those assets. Lightkeeper received the effects of that misconduct in Massachusetts, where the misappropriation impaired its competitive position and the value of its proprietary information. Taken together, those circumstances place the center of gravity of Arcana's unfair competitive conduct in Massachusetts even if Arcana personnel carried out portions of the scheme remotely.

93. Arcana's conduct caused Lightkeeper loss of money or property, including impairment of the value and exclusivity of Lightkeeper's proprietary information, and competitive injury. The challenged conduct also threatens additional loss for which § 11 authorizes equitable relief. On information and belief, Arcana acted knowingly and willfully, entitling Lightkeeper to the remedies provided by Mass. Gen. Laws ch. 93A, § 11, including multiple damages where statutorily warranted, attorneys' fees, costs, and equitable relief.

**COUNT VI**
**Tortious Interference with Contractual Relations**
**(Massachusetts Common Law)**

94. Lightkeeper incorporates the preceding allegations as though fully set forth here.

95. At all relevant times, Lightkeeper had a valid and enforceable written contract with the Source Customer. That contract governed the Source Customer's access to Lightkeeper's platform and proprietary information and imposed binding restrictions on access to, use of, and disclosure of Lightkeeper Confidential Information, including restrictions barring use or disclosure for the competitive benefit of unauthorized third parties.

96. Lightkeeper uses materially uniform confidentiality, access, and use restrictions for customers receiving access to the category of nonpublic information at issue here. Because the Source Customer obtained the relevant materials through such customer access, the Source Customer was subject to those contractual obligations at the time of the conduct alleged in this Complaint.

97. Arcana knew that the Source Customer's access arose from a contractual relationship with Lightkeeper and knew that the relationship imposed confidentiality, access, and use restrictions. Arcana's knowledge is established by its sophistication, its direct competition with Lightkeeper, its firsthand familiarity with Lightkeeper through mutual customers, the controlled and nonpublic character of the information it obtained, and the circumstances through which it obtained that information.

98. Arcana further knew the operative facts underlying those restrictions: the Source Customer received access because it was a Lightkeeper customer; the information belonged to Lightkeeper; Lightkeeper treated the information as confidential and proprietary; and the Source Customer's access served authorized customer purposes rather than Arcana's competitive development.

99. On information and belief, Arcana intentionally induced or participated in a breach of those contractual obligations by obtaining Lightkeeper materials from or through the Source Customer for Arcana's own competitive development, such purpose being outside the customer use rights granted by § 2.1 and inconsistent with the access, use, ownership, and confidentiality restrictions reflected in §§ 2.2, 2.3, 6.1, and 6.2 of the Model MSA.

100. The Source Customer breached its contractual obligations to Lightkeeper by furnishing or facilitating access to Lightkeeper Confidential Information for purposes prohibited by its agreement with Lightkeeper.

101. Arcana's interference employed improper means and served an improper competitive purpose. Arcana knowingly used a contractual customer relationship to circumvent Lightkeeper's confidentiality and access restrictions and to acquire proprietary competitor information for Arcana's own commercial advantage. The contractual restrictions protect a broader category of confidential information than the information for which Lightkeeper seeks statutory trade-secret protection.

102. Arcana's conduct directly and proximately caused injury to Lightkeeper, including loss of the benefit of its contractual confidentiality protections, impairment of the exclusivity and commercial value of its confidential information, competitive injury arising from Arcana's acquisition and use of that information, and other damages in an amount to be determined at trial.

103. Lightkeeper is entitled to compensatory damages in an amount to be proven at trial, and all other relief available under Massachusetts law.

**PRAYER FOR RELIEF**

WHEREFORE, Lightkeeper respectfully requests that the Court enter judgment in its favor and against Arcana and award the following relief:

A. A declaration that Arcana infringed Lightkeeper's registered INSIGHTS AT THE SPEED OF THOUGHT mark and violated 15 U.S.C. §§ 1114 and 1125(a);

B. Temporary, preliminary, and permanent injunctive relief enjoining Arcana and all persons acting in concert with it from using "Insight at the speed of thought," "Insights at the speed

of thought," or any confusingly similar designation in connection with portfolio intelligence, financial analytics, financial information, research, or related services;

C. An order requiring Arcana to remove the challenged designation from its App Store listing, websites, applications, pitch materials, advertisements, social-media content, sales materials, and other commercial communications, and to deliver up or destroy infringing materials as authorized by law;

D. Temporary, preliminary, and permanent injunctive relief barring Arcana from acquiring, using, disclosing, or benefiting from the Lightkeeper Trade Secrets or other Lightkeeper confidential information obtained through unauthorized or restricted access;

E. An order requiring Arcana to return, delete, destroy, and certify the destruction of all copies, extracts, screenshots, reports, exports, credentials, documentation, and derivative materials containing or embodying misappropriated Lightkeeper Trade Secrets, subject to appropriate litigation-preservation procedures;

F. Arcana's profits, Lightkeeper's damages, costs of the action, and all other monetary relief available under 15 U.S.C. § 1117;

G. Lightkeeper's actual loss, Arcana's unjust enrichment, reasonable royalty damages where applicable, exemplary damages for willful and malicious misappropriation, and attorneys' fees and costs under the DTSA and Massachusetts Trade Secrets Act;

H. Actual damages, multiple damages authorized by Mass. Gen. Laws ch. 93A, § 11, and attorneys' fees and costs;

I. Compensatory damages for tortious interference with contractual relations;

J. Prejudgment and post-judgment interest to the maximum extent permitted by law; and

K. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Lightkeeper demands a trial by jury on all issues so triable.

Respectfully submitted,

**LIGHTKEEPER, LLC**
By their attorney,

*/s/ Paul Tuchmann*

Paul Tuchmann (BBO #653921)
Wiggin and Dana LLP
1 Federal Street
Boston, MA 02110
T: 203.498.4336
ptuchmann@wiggin.com

Kate E. Cassidy *(Pro Hac Vice Forthcoming)*
Andrew Bauer *(Pro Hac Vice Forthcoming)*
Tala Sebastian *(Pro Hac Vice Forthcoming)*
Wiggin and Dana LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
T: 212.551.2600
Kcassidy@wiggin.com
Abauer@wiggin.com
Tsebastian@wiggin.com

Dated: September 29, 2026